**PEOPLE OF THE TERRITORY OF GUAM**

v.

**JOHNNY C. DELA ROSA, Defendant**

Criminal Case No. 116F-78

Superior Court of Guam

July 20, 1978

**ABBATE,** *Presiding Judge*

## DECISION

This matter comes before the Court on defendant's Motion For Change of Venue. The Motion was heard on July 12, 1978, and decision was reserved.

Defendant bases his motion for change of venue on the ground that there is a reasonable likelihood, in the absence of such relief, that a fair and impartial trial cannot be had.

The right to a fair and impartial trial is derived from the Sixth Amendment of the Constitution. This provides that, "in all criminal prosecutions the accused shall enjoy the right to . . . an impartial jury . . ." U.S. Const. Amend. VI. Several procedural safeguards have been established in order to insure the defendant of a fair trial. A defendant may (1) seek a change in venue, (2) seek a continuance, (3) question the prospective jurors during voir dire as to whether they were influenced by the pre-trial publicity, (4) challenge the jurors for cause, (5) exercise his peremptory challenges, (6) challenge the jury panel, (7) obtain precautionary instructions from the Judge. *Ignacio v. People of the Territory of Guam,* 413 F.2d 513, 517 (1969).

Thus, a change of venue is not the exclusive procedural mechanism which can be utilized to assure the defendant of a fair trial. Rather, it appears that in only one case has the Supreme Court held that only a change of venue would secure an impartial trial for the defendant.

It was in *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417 (1963), that the Supreme Court "explicitly held that

only a change of venue was constitutionally sufficient to assure the kind of impartial jury that is guaranteed by the Fourteenth Amendment." *Groppi v. Wisconsin*, 400 U.S. 511, 91 S.Ct. 490, 493 (1971). In that case, a moving picture with sound track had been made of an interview in jail between the sheriff and the defendant. In response to leading questions by the sheriff, the defendant admitted in detail the commission of the robbery, kidnapping and murder. This film was then televised three times to tens of thousands of people in the parish. The Court found that it was a denial of due process of law "to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to crimes with which he was later to be charged." *Rideau v. Louisiana*, 83 S.Ct. at 1419.

█ Absent an extreme factual situation akin to *Rideau*, a change of venue is not constitutionally mandated as the only procedure available to protect defendant's right to an impartial trial. However, as noted, it is one of the procedures that can be utilized to obtain a fair trial. In ruling on a motion for change of venue based on pre-trial publicity, the trial court must determine whether the accused has been prejudiced in his right to a fair trial. Two tests have been applied. The first test is applicable in those cases in which the circumstances are inherently lacking in due process. In those instances, the Supreme Court has authorized a change of venue without a showing of actual prejudice. Illustrative of the application of the first test are the cases of *Estes v. State of Texas*, 381 U.S. 532, 85 S.Ct. 1628 (1965), and *Sheppard v. Maxwell*, 384 U.S. 350, 86 S.Ct. 1507 (1966).

In *Estes v. State of Texas*, supra, certain pre-trial proceedings and portions of the actual trial were televised. The Court noted that:

Where pre-trial publicity of all kinds has created intense public feeling which is aggravated by the telecasting or picturing of the trial the televised jurors cannot help but feel the pressures of knowing that friends and neighbors have their eyes upon them. *Estes v. State of Texas*, 85 S.Ct. at 1634.

In finding that the probability of prejudice was sufficiently great to find the trial inherently lacking in due process without a showing of actual jury prejudice, the Court stated:

It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process. *Estes v. State of Texas*, 85 S.Ct. at 1633.

In *Sheppard v. Maxwell*, 384 U.S. 350, 86 S.Ct. 1507 (1966), the Supreme Court indicated that the facts warranted either a continuance or change of venue without a showing of actual jury prejudice. The circumstances of *Sheppard* were as follows:

For months the virulent publicity about Sheppard and the murder had made the case notorious. Charges and counter-charges were aired in the news media besides those for which Sheppard was called to trial. In addition, only three months before trial, Sheppard was examined for more than five hours without counsel during a three-day inquest which ended in a public brawl. The inquest was televised live from a high school gymnasium seating hundreds of people. *Sheppard v. Maxwell*, 86 S.Ct. at 1518.

■ In the case at bar, defendant contends that the citizens of Guam have been prejudiced by exposure to publicity concerning the possible decline of Japanese tourism, the succession of defense attorneys that were appointed and excused, the article captioned "Paper Says Dela Rosa Admitted to Killings" (PDN, May 24, 1978); the article captioned "Suspect Possessed Watch, Jewelry, of Murder Victim" (PDN, May 5, 1978); the article stating that de-

fendant may be responsible for the Texiera murders, (PDN, April 25, 1978) ; and the article concerning defendant's past criminal record (PDN, April 28, 1978).

This pre-trial publicity does not approach the magnitude of the prejudicial publicity condemned in either *Rideau* or *Estes* and *Sheppard*. The articles, on the whole, are factual accounts. The Supreme Court in *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 2036 (1975), refused to hold "that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process". This Court finds that the publication of the articles did not constitute "inherently prejudicial publicity which has so saturated the community, as to have a probable impact upon the prospective jurors". *McWilliams v. United States*, 394 F.2d 41, 44 (1968).

Finding the first test inapplicable to this case, the Court has applied the second test. Under this test, the Court examines the totality of the circumstances.

Whether there has been prejudicial publicity requiring action by the Court is to be determined by an evaluation of the totality of the surrounding facts in the matter. *Wansley v. Slayton,* 487 F.2d 90, 92 (1973).

To grant the change of venue, it must be shown that there is actual jury prejudice.

The mere general showing of publicity thought to be adverse to a party is not sufficient to require a change of venue except in the most extraordinary cases. In the usual situation, the movant must at least make a showing that the allegedly prejudicial material reached the venireman, so that a foundation is laid for the possibility of actual bias. (Cites omitted.) It is not sufficient to allege adverse publicity without a showing that the jurors were biased thereby. *Ignacio v. People of the Territory of Guam,* 413 F.2d 513, 518 (1969).

■ Actual jury prejudice cannot be proven by evidence of mere exposure to articles concerning the defendant or the alleged criminal act. This was articulated by the Supreme Court in *Irvin v. Dowd*, 366 U.S. 724, 81 S.Ct. 1639, 1642–3 (1961):

It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. (Cites omitted.)

The logic of this was noted in *Calley v. Callaway*, 519 F.2d 184, 210, cert. den. 425 U.S. 911, 96 S.Ct. 1505 (1976):

If in this age of instant, mass communication, we were to automatically disqualify persons who have heard about an alleged crime from serving as a juror, the inevitable result would be that truly heinous or notorious acts will go unpunished. The law does not prohibit the informed citizen from participating in the affairs of justice.

■ The proper procedure for ascertaining whether the adverse publicity has actually biased the prospective jurors is voir dire. *United States v. Jones*, 542 F.2d 186 (1976); *Wansley v. Slayton*, 487 F.2d 92 (1973); *Margoles v. United States*, 407 F.2d 727, cert. den. 396 U.S. 833, 90 S.Ct. 89. The Ninth Circuit Court of Appeals in *People of the Territory of Guam v. Mendiola*, No. 73-2680 (9th Cir. Ct. of Appeals, filed May 17, 1974), dealing specifically with a Sixth Amendment challenge to a denial

of change of venue on Guam, held that the trial court properly approached the situation as one to be handled upon voir dire.

Jury selection is set for August 10, 1978. Thus, the defendant has brought his motion for change of venue before the Court has had the opportunity to voir dire the jury and determine whether the defendant can receive a fair and impartial trial. Defendant's motion is premature.

For the reasons aforementioned, defendant's motion is denied.

SO ORDERED.